By the Court Cowen, J.
We do not- perceive what can be' alleged as a defect in the proof of notice to Dodge. It was duly mailed at Albany, and directed to him at his place of residence'.No objection was made that the notice was too late. Other' objections being out of the way, therefore, Dodge would bei chargeable.
The bill, was clearly enough, on its face, intended to be *14 a draft by the Farmers’ Bank, &c. That institution is also chargeable, therefore, unless other objections taken at the trial were available.
The plaintiff took this bill with notice that it was drawn by, if not upon, one of those institutions which came into existence under the general banking statute of 1838. (Sess. Laws of that year, p. 245.) There was enough on the face of the bill to put him on inquiry; and he came forward with proof at the trial of the legal character of the bank, in order to charge Wyckoff as president. If he took the bill in good faith, it was at least necessary, after what had transpired, to show that to ■ have been so, affirmatively.
Then what is the law respecting a bill of this character? The action of such banks is very much limited by the statute, especially with regard to the issuing of negotiable paper. One great object of the statute was, to guarantee the redemption of all such paper, by the assignment of stocks or mortgages of real estate to the comptroller, without whose consent it cannot issue; and when issued with that consent, it must bear a certain form. True, there is no nullifying clause in the statute against negotiable notes or bills, in whatever way or form issued, nor- any positive prohibition of negative against them. But both are most obviously implied, not only in the general frame and scope of the statute, (vide Ang. & Ames, 121, 149, 150, 151, 163,' and the cases there cited,) but more emphatically in its policy. Once allow an ssue of negotiable paper independently of the state agents, and they will be no longer appealed to. Thus, a security, which it is difficult to preserve, under the most careful supervision, would be entirely thrown away; and the restraint upon excessive issues, so clearly intended by the legislature, would be removed. It was said, in argument, that the statute reaches only such notes as are-to be put in circulation as money; and that this bill was not issued for such a purpose. The name of Dodge endorsed in blank, or the name so endorsed by any subsequent holder, would give it just as ready a circulation as if it had been payable to bearer. When the names of Keeler & Durant came upon the bill in' question, it might have been passed *15 from hand to hand, and was to all intents as much a circulating hank bill, so far as facility of transfer was concerned, as if it had been payable to bearer. An adjudication that this bill binds the bank, would be a direct precedent for its issue of bills payable to bearer. It could reach the same thing practically, by drawing bills or notes payable to its cashier or other instrument, to be endorsed by him in blank; and then, even if a distinction could be raised between these, and bills or notes payable to bearer, of what use all the precautions of the statute 1 Its funds, forms, and penalties, would be subjects of derision, and the direct consequence, a circulating medium of the very worst character—a post note system without the semblance of security. Let us not be told of a want of purpose to create such a mediumor that there is no intention to circulate bills like this as money. The intention of an action must be judged by its necessary consequences. When these are directly pernicious, the intent to work mischief becomes a conclusion of law. (Regina v. Boardman, 2 Mood. & Rob. 147, 148.) It was said in argument, that bills like this are necessary by way of dealing among banking institutions; and the adjustment of balances was, I believe, mentioned. But there are so many other modes of deal and adjustment, that the argument is not of sufficient cogency to overcome the only feature in the statute, which can render the banks organized under it at all safe as the authors of a circulating medium. We do not speak unadvisedly, nor without reflection. This is not the first time our attention has been called to the question judicially; and we hesitate not to say, that the plaintiff’s proof at the trial struck his claim with death, at least as against the bank. It is of the nature of a note or bill that no one can be made directly liable upon it, unless he appear on the instrument to be a party. And this bank so appearing, operated as notice to the plaintiff that the bill was a nullity.
It was not accepted by the North American Trust and Banking Company, which we take to be another institution erected under the general banking law. Had it been so accepted, and the plaintiff had taken it with such accep *16 tance, or had even procured the acceptance, this would certainly not strengthen his claim. He would then have been still more obviously a party to the fraud. Non constat, however, but he may have been ignorant that the parties drawees, were prohibited the putting of such paper in circulation; not that he is to be held ignorant of the law, but he may not have known, nor do we know judicially in this proceeding, that the drawees" are not a corporation which may issue all kinds of negotiable paper, The plaintiff may be in this respect a perfectly innocent holder; and we must intend that he is. There was no offer on the trial to show that the drawees were an institution under the general banking law; and we must intend in the plaintiff’s favor till that fact be shown. But, as we have already seen, this takes from him only part of the vicious intention to participate as a dealer in an illegal currency.
We admit the defence is an ungracious one, both as to Dodge and the drawers; it is not, however, for their sake, but for that of the statute and the public, that we feel constrained to give full scope to this defence. There would be more difficulty in sustaining it as to the endorser, were it not to be regarded as an obvious attempt by all parties, (himself among them,) to violate a principle of public policy. The mere nullity of the bill in respect to the drawers, because it wants the formal signatures and sanctions required by the statute, would be no defence for the endorser, If a man will endorse a paid bill, or one which is otherwise inoperative against others on private grounds, he is yet chargeable. But when he comes knowingly to aid in sending forth a prohibited currency upon community, the mala fide holder can no more recover against him, than if he had become a party in order to defraud creditors, or to defraud a family by marriage brokerage. The statute makes it a misdemeanor for the comptroller to sanction an issue of bills or notes by these institutions, until after a deposit with him of the proper fund for their redemption. But I do not propgse to go over the various "restraints contained in the statute. It is studded with numbers of them— all intended as out-worlcs—as defences against issues of ir *17 redeemable paper. It would be imputing to the enacting power something worse than absurdity to suppose, that at a time when parts of this country were flooded with such issues, it intended to allow these banks, by the change of a few words, to set at naught the prescriptions both of legislative enactment and of sound policy. It is not necessary to deny that the endorsee may recover against his immediate endorser. Here the endorser sought to be charged is not immediate; and beside, the action is in that artificial form which must be sustained by the bill as such, or not at all. It is impossible, we think, for the plaintiff, even as between himself and Dodge, to escape the character of a mala fide holder of paper, issued contrary to public policy; not to say, contrary to public morals. He can no more recover, therefore, than if he had taken the endorsement of a note, with knowledge that it had been given in consideration of a stipulation for general restraint of trade. (Chit, on Bills, 92, a, and 94, Am. ed. of 1839.) There must be a new trial, the costs to abide the event.
New trial granted.(a)

 See Delafield v. Kinney, president, &c. (24 Wend. 345.)